RINKER BOAT CO., Petitioner,

v.

STATE BOARD OF TAX
COMMISSIONERS,
Respondent.

No. 49T10–9605–TA–44.

Tax Court of Indiana.

Dec. 30, 1999.

Curtis Dickinson, David L. Pippen, Dickinson & Abel, Indianapolis, Indiana, Attorneys for Petitoner.

Jeffrey Modisett, Attorney General of Indiana, Joel Schiff, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Respondent.

FISHER, J.

Rinker Boat Company, Inc. (Rinker Boat) appeals several final determinations of the State Board of Tax Commissioners (State Board) as of the March 1, 1990, 1991 and 1992 assessment dates that denied Rinker Boat certain adjustments for its property. Rinker Boat's original tax appeal raises the following issues that the Court puts into two categories: Those involving its two Form 133 petitions and those involving its Form 131 petition. Rinker Boat raises the following issue regarding its Form 133 petitions:

Whether the State Board erred when it assessed Rinker Boat's property as hav-

ing certain types of heating, lighting, interior partition walls and exterior walls.[1]

Rinker Boat's Form 131 petition raises the following two issues:

(1) Whether the State Board erred when it classified Rinker Boat's property as a Light Manufacturing facility instead of a Small Shop facility.

(2) Whether the State Board erred when it denied Rinker Boat a deduction for obsolescence depreciation.

The Court will address each issue in turn.

## FACTS AND PROCEDURAL HISTORY

Rinker Boat owns a boat manufacturing plant located in Syracuse, Indiana. On October 8, 1992, Rinker Boat filed a Form 131 Petition for Review of Assessment for the 1992 tax year, and on November 18, 1992, Rinker Boat filed two Form 133 Petitions for Correction of Error for the 1990 and 1991 tax years. In its petitions, Rinker Boat claimed that it had unit heat as opposed to forced-air heat, florescent lights instead of high-intensity lights, 240 linear feet of inside partitioning instead of 900 linear feet, and exterior walls composed of concrete and metal siding rather than entirely of concrete block. Rinker Boat also challenged the model used by the State Board in assessing Rinker Boat's plant in its Form 131 petition. Finally, Rinker Boat claimed that it was error for the State Board to deny it any deduction for functional obsolescence. The State Board held a hearing on November 27, 1995 on Rinker Boat's 131 petition. No hearing was held concerning Rinker Boat's two Form 133 petitions.[2] The State Board subsequently issued its final assessment determination for Rinker Boat's 131 peti-

tion on March 29, 1996, and on April 15 and 19, 1996, the State Board issued its final assessment determinations for Rinker Boat's 1990 and 1991 Form 133 petitions respectively, denying Rinker Boat an adjustment in each case. Rinker Boat then filed this original tax appeal on April 30, 1996. The Court held a trial in this matter on April 7, 1997, followed by oral arguments on September 8, 1997. Additional facts will be supplied where necessary.

## ANALYSIS AND OPINION

### Standard of Review

The State Board is given great deference when it acts within the scope of its authority. *See Morris v. State Bd. of Tax Comm'rs,* 712 N.E.2d 1120, 1122 (Ind. Tax Ct.1999). Accordingly, this Court reverses the State Board's final determinations only when those determinations are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *See id.*

### Discussion

#### I. Rinker Boat's Form 133 petitions.

Before deciding this issue, it is necessary to discuss the mechanics of judicial review for a Form 133 petition. In its final assessment determinations, the State Board claimed that the issues raised by Rinker Boat were not correctable via a Form 133, since each issue involved a subjective judgment. (Joint Ex. 1.) IND.CODE ANN. section 6–1.1–15–12 (West Supp.1999) provides the basis for correction of errors on a Form 133 petition. In relevant part, it states that errors can be corrected for the following reasons: "(1) there was a mathematical error in computing the taxes

---

1. Rinker Boat challenged the State Board's determination of its heating, lighting, interior and exterior walls in both its Form 133 petitions and in its Form 131 petition. The Court will consider these issues in the discussion of Rinker Boat's Form 133 petitions.

2. IND.CODE ANN. § 6–1.1–15–12(e) (West Supp. 1999) does not specifically require a hearing to be held concerning Form 133 petitions. Rather, the statute dictates that a copy of the State Board's final determinations be sent to the taxpayer, which was done here.

or penalties on the taxes; (2) the taxes, as a matter of law, were illegal; [or] (3) through an error of omission by any state or county officer, the taxpayer was not given credit for an exemption or deduction permitted by law." The Court has interpreted this section to mean that only *objective* errors may be corrected on a Form 133 petition. *See Barth, Inc. v. State Bd. of Tax Comm'rs,* 699 N.E.2d 800, 802; *see also Hatcher v. State Bd. of Tax Comm'rs,* 561 N.E.2d 852, 857 (Ind.Tax Ct.1990). Where a model contains features to which value has been assigned, but those features do not exist in the subject improvement, the value assigned should be subtracted from the improvement's base rate. *See Hatcher,* 561 N.E.2d at 857. Determining whether certain values that have been assigned should have been subtracted involves a simple observation of fact without resort to subjective judgment. *See Barth,* 699 N.E.2d at 802 (quoting *Bock Prods. v. State Bd. of Tax Comm'rs,* 683 N.E.2d 1368, 1370 (collecting cases) (Ind. Tax Ct.1997)).

■ The regulations provide the costs of certain components and features. This allows assessors to adjust a property's base rate to account for a deviation from the models. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–3(c) (codified in present form at *id.* tit. 50, r. 2.2–11–3(1996)). This schedule lists the component costs of many of the interior, exterior and mechanical features listed in the models. *See Barth,* 699 N.E.2d at 802. If an improvement does not contain a component presumed to exist in the model, and a cost for that component is listed in the schedule, a deduction from the base rate should be made pursuant to that schedule. *See id.* These types of adjustments involve objective determinations, which are correctable via a Form 133 petition. *See* IND.CODE ANN. § 6–1.1–

15–12; *see also Hatcher,* 561 N.E.2d at 857.

In each of its final determinations, the State Board rejected Rinker Boat's claims that its heating, lighting, interior partition and exterior walls were assessed incorrectly. Simply stated, the State Board refused to consider Rinker Boat's Form 133 petitions because it believed that the issues raised could only be considered on a Form 131.[3] The determinations in question involved ascertaining whether the subject property possessed the features claimed by Rinker Boat. The determinations complained of were thus based on uncomplicated true or false findings of fact. *See Barth,* 699 N.E.2d at 802. Therefore, the Court finds that the State Board's alleged errors were objective, and were able to be raised on a Form 133 petition. *See* IND. CODE ANN. § 6–1.1–15–12.

■ The Court will now consider whether the State Board improperly denied the adjustments requested by Rinker Boat for heating, lighting, interior partitions and exterior walls. Rinker Boat claims that its plant employed gas-fired unit heaters, while the State Board contends that Rinker Boat used gas-fired forced air heat.[4] Rinker Boat testified that forced-air heat acts as a type of central heating and consists of ductwork that runs throughout a building. Unit heaters, on the other hand, are not connected by ductwork, and usually employ a large fan to blow the heat throughout a building. At trial the State Board admitted that Rinker employed unit heaters instead of forced-air heat. (Trial Tr. at 79, Joint Ex. 1.) This determination by the State Board is arbitrary and capricious. *See Western Select Properties, L.P. v. State Bd. of Tax Comm'rs,* 639 N.E.2d 1068, 1074 (Ind. Tax Ct.1994) (State Board's determination is unsupported by any evidence at all, and is therefore arbitrary and capricious.)

---

**3.** The State Board did review the Form 133 issues for the year covered by Rinker Boat's Form 131 petition, since it raised, in part, the same issues as its Form 133 petitions.

**4.** For each assessment under review, the State Board based its findings on the Light Manufacturing Model found in Schedule C. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–3(c).

Rinker Boat next argues that it used florescent lighting throughout its plant, while the State Board claims that Rinker Boat employed high-intensity lighting. (Joint Ex. 1.); *see also* IND. ADMIN. CODE tit. 50, r. 2.1–4–3(c). Rinker Boat presented evidence that it used florescent, rather than high-intensity lighting. (Trial Tr. 13, 17.) In response, the State Board admitted that Rinker Boat did in fact use florescent, rather than high-intensity lighting. (Trial Tr. at 65–67.) Thus, this determination was also arbitrary and capricious. *See Western Select,* 639 N.E.2d at 1074.

The next issue centers around the amount of interior wall space inside the subject property. In assessing this part of Rinker Boat's property, the State Board used the Light Manufacturing model listed in the regulations that assumed Rinker Boat had 60 square feet of floor space for every linear foot of partitioning. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–3(c). Since the subject property contained 54,000 square feet of floor space, the State Board assessed the building with 900 linear feet of partitioning.[5] Upon inspection, though, the State Board found two, 120 foot-long firewalls, for a total of 240 linear feet of inside partitioning. However, Rinker Boat's assessment remained at 900 linear feet. The Court has previously dealt with a similar situation. *See generally Hatcher,* 561 N.E.2d at 857. In *Hatcher,* the Court made the analogy that it would be an error for the State Board to make an entry for a fireplace when none existed. *See id.* Similarly here, the State Board assessed Rinker for 660 square feet of nonexistent partitioning. Further, the State Board *conceded* that Rinker's building was as-

sessed as having too many linear feet of partitioning, but did nothing to correct its errors. (Trial Tr. at 62, 82.) This determination is arbitrary and capricious. *See id.; see also Western Select,* 639 N.E.2d at 1075.

Rinker Boat finally claims that the State Board erred when it priced its exterior walls as consisting of solid concrete block. At trial, Rinker Boat argued that its exterior walls were composed of both concrete and metal siding, while the State Board claimed that Rinker Boat's exterior walls consisted entirely of concrete block.[6] The State Board classified both types of walls as the same. Later in the proceedings, the State Board admitted that IND. ADMIN. CODE tit. 50, r. 2.1–4–10(9)(1988) (codified in present form at *id.* tit. 50, r. 2.2–15–1(1996)) makes a distinction between solid concrete walls and walls composed of both concrete and metal siding. (Trial Tr. at 52.) When asked about this, the State Board hearing officer stated that he was not familiar with the regulation. (Trial Tr. at 56.) As with the preceding issues, the Court finds this determination by the State Board arbitrary and capricious. *See Western Select,* 639 N.E.2d at 1074. The Court finds that Rinker Boat's property consists of gas-fired unit heaters, instead of forced-air heat, florescent lighting as opposed to high intensity lighting, 240 linear feet of inside partitioning rather than 900 feet, and 8 feet of exterior concrete walls, followed by 14 feet of metal siding, not 22 feet of concrete block. The Court further finds that each assessment described above were errors as a matter of law that may be corrected on a Form 133. *See* IND.CODE ANN. § 6–1.1–15–12.[7] Upon

---

5. Dividing 54,000 square feet by 60 linear feet derived this figure. Thus, the Light Manufacturing model used by the State Board assumes 900 linear feet of inside partitioning. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–3(c).

6. The height of Rinker's exterior walls is 22 feet. Of this, the first eight feet consist of solid concrete block, while the remaining 14 feet is composed of a metal skeleton, covered by metal siding. (Trial Tr. at 19.)

7. The State Board also asserted that a lower grade could be used to account for the discrepancies found in Rinker Boat's building instead of an actual adjustment. However, the regulations state that grade is merely an indication of the quality and workmanship of a building's improvements. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–3(f) (1988) (codified in present form at *id.* tit. 50 r. 2.2–10–3 (1996)). While the State Board's method has merit, *see Whitley Products v. State Board. of Tax Com-*

remand, Rinker Boat has the burden of proof to ascertain the cost of each component described above based on the regulations. If this cannot be done but must be accounted for by grade or other subjective factors, the appeal must fail as to such items, for review of a Form 133 would require the use of a subjective judgment, which is not permitted. *See* IND.CODE ANN. § 6–1.1–15–12. The grade or other subjective factors may be used if necessary on remand of Rinker Boat's Form 131 petition. Therefore, the Court now RE-MANDS this issue to the State Board for action consistent with the foregoing.

## II. Rinker Boat's Form 131 petition.

■■■ Rinker Boat challenges both the classification of its building and the finding of no obsolescence by the State Board in its Form 131 petition filed for the 1992 tax year. A Form 131 petition may require a subjective determination by an assessor. *See Western Select,* 639 N.E.2d at 1073. Consequently, the State Board is given a great deal of discretion in making those determinations. *See Hatcher,* 561 N.E.2d at 857. Nevertheless, the State Board must provide some reasoning to support its determination. *See Western Select,* 639 N.E.2d at 1073. The State Board is also obligated to consider evidence presented by the taxpayer and deal with that evidence in a meaningful manner. *See Loveless Const. Co. v. State Bd. of Tax Comm'rs,* 695 N.E.2d 1045, 1049 (Ind. Tax Ct.1998) *review denied; see also Zakutansky,* 696 N.E.2d 494, 496 (Ind. Tax Ct.1998). In order to successfully challenge a final determination, the taxpayer will usually have to offer a competing view, along with evidence to support that view, of what the assessment should be. *See Clark v. State Bd. of Tax Comm'rs,* 694 N.E.2d, 1230, 1234 (Ind. Tax Ct.1998). In order to prevail, a taxpayer must present a prima facie case supported by probative evidence. *See id.*

### A. *Classification of Rinker Boat's building.*

■■■ The State Board assessed Rinker Boat's building as a Light Manufacturing facility instead of a Small Shop facility. Its determination was based on the building's size, height and construction. (Trial Tr. at 67–68.) The models listed in the regulations do not take size into consideration. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–7 (1988)(codified in present form at *id.* tit. 50, r. 2.2–11–1(1996)). Concerning height, both the Light Manufacturing and Small Shop models are listed as having reinforced, 14–feet high concrete block walls. Rinker's building was 22 feet high and was composed of a combination of concrete, metal and metal siding. Such evidence offers nothing regarding the appropriate model.

With respect to Rinker Boat's interior features, the Court notes that the Light Manufacturing model presumes high-intensity lighting, while the Small Shop model presumes average cost and non-metallic fixtures. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–7. Rinker Boat employs florescent lighting. Rinker Boat's lighting system seems therefore to resemble the Small Shop model. *See id.* For heat, the Light Manufacturing model presumes gas fired, forced air heat, while the Small Shop model presumes oil fired unit heaters with fan. *See id.* As previously mentioned, Rinker Boat has gas fired unit heaters with a fan. *See supra* at 6. Rinker Boat presents no other evidence comparing the remaining attributes of each model with its building and therefore has not carried its burden of proof on this issue. Thus, the court AF-FIRMS the State Board's classification of Rinker Boat's building as a Light Manufacturing facility.

### B. *Obsolescence Depreciation.*

■■■ Rinker challenges the application of a zero obsolescence factor by the State

*missioners,* 704 N.E.2d 1113, 1117 (Ind. Tax Ct.1998) it involves an assessor's subjective judgment, which should be avoided where possible. *See Whitley Prods.,* 704 N.E.2d at 1117; *see also Clark,* 694 N.E.2d at 1236 n. 6.

Board for its building. Specifically, Rinker Boat contends that it should be allowed a deduction for functional obsolescence based on its poor land to building ratio, poor office to building ratio, inadequate parking and inadequate loading docks. Despite the evidence, the State Board contends that Rinker Boat presented no proof that its building suffers from any obsolescence.

The determination of obsolescence is a two-step inquiry. *See Clark,* 694 N.E.2d at 1238. The assessor or taxpayer on appeal must identify the causes of obsolescence and then quantify the amount of obsolescence to be applied. *See id.* Functional obsolescence is either something that buyers are unwilling to pay for or a deficiency that causes the property to lose value when compared to a more modern replacement. *See* Michael D. Larson, *Identifying, Measuring and Treating Functional Obsolescence in an Appraisal,* 10 J. PROP. TAX MGMT. 42, 44 (1999); *see also* IND. ADMIN. CODE tit. 50, r. 2.1–5–1 (codified in present form at *id.* tit. 50, r. 2.2–10–7(1996)). Functional obsolescence therefore works as a penalty against the property's value. *See* Larson, *supra,* at 44; *see also* IND. ADMIN. CODE tit. 50, r. 2.1–5–1. Examples of functional obsolescence include a poor ratio of land to building area, inadequate parking, truck or railroad loading or unloading facilities and poor proportion of office, rental or manufacturing, and warehouse space. *See id.* tit. 50, r. 2.1–5–1.

The record indicates that Rinker Boat's building suffers from a low land to building ratio. In addition, Rinker Boat testified that the subject building runs onto an adjoining parcel, causing trucking and parking problems within the plant. (Trial Tr. at 14.) Also, the offices for Rinker Boat's building are not located in the building itself, but are located on the other side of the plant. In contrast, the State Board claimed that no deduction was allowed for obsolescence since it felt that Rinker Boat's building was being operated for its intended purpose of boat building. In addition, the State Board testified that Rinker Boat's building was of adequate length, width and height and was well laid out. The State Board then concluded that Rinker Boat's building was the most-efficient boat building facility that could be constructed. (Resp't. Br. at 8.) This Court has previously stated that feelings do not constitute the requisite probative evidence required to uphold a State Board determination, nor do they constitute substantial evidence. *See Freudenberg–Nok General Partnership v. State Bd. of Tax Comm'rs,* 715 N.E.2d 1026, 1030 (Ind. Tax Ct.1999) *review denied.*

As stated in *Clark,* in order to establish a prima facie case, a taxpayer must introduce evidence "sufficient to establish a given fact and which if not contradicted will remain sufficient." *Clark,* 694 N.E.2d at 1233. Once the taxpayer does so, it is then incumbent upon the State Board to rebut this evidence and support its decision with substantial evidence. *See id.* While some of Rinker Boat's evidence may be seen as the mere identification of factors that cause obsolescence, Rinker Boat has done more than make bare allegations. *See Herb,* 656 N.E.2d at 893. However, because this case is pre-*Clark,* Rinker Boat has met its prima facie case requirements. The State Board has neither rebutted the evidence offered by Rinker Boat nor dealt with it in a meaningful manner. *See Clark,* 694 N.E.2d at 1241. As a result, the Court REMANDS this issue to the State Board.[8]

## CONCLUSION

For the reasons explained above, the Court AFFIRMS in part, REVERSES in part and REMANDS this cause to the

---

**8.** On remand, however, Rinker Boat will be subject to the requirements of *Clark.* Thus, it must not only identify but also *quantify* the amount of functional obsolescence for its building and support both with probative evidence. *See Clark,* 694 N.E.2d at 1241.

State Board for further proceedings consistent with this opinion.[9]

9. The Court notes that Rinker Boat's counsel in this case cited unpublished case law in Rinker Boat's briefs. Ind. Tax Ct. Rule 16(E) specifically states that "Unless specifically designated "For Publication", memorandum decision shall not be published and shall not be regarded as precedent *nor cited* before any court except for the purpose of establishing the defense of res judicata, collateral estoppel or the law of the case." (emphasis added). Counsel is admonished not to do it again.